1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

9   Jose Luis Arevalo,                    )        No. CV 05-2984 PHX-NVW (LOA)
                                          )
10           Petitioner,                  )        **REPORT AND RECOMMENDATION**
                                          )
11   vs.                                  )
                                          )
12   Joe W. Booker, Jr.,                  )
                                          )
13           Respondent.                  )
     _____ )

14

15           This matter arises on Petitioner's Petition for Writ of Habeas Corpus pursuant to 28

16   U.S.C. § 2241.  Petitioner alleges that his placement in the Red Card Program and the denial

17   of good time credits violated due process. Respondents have responded asserting that Petitioner

18   was afforded all of the process to which he was due.  (document # 12) Petitioner has filed a

19   Reply.  (document # 14)

20                              **FACTUAL BACKGROUND**

21           On January 12, 2001, in the Middle District of Florida Petitioner was sentenced to an

22   aggregated term of 360 months imprisonment, 6 years of supervised release, and a $ 25,000 fine

23   for violations of 21 U.S.C. § 846, conspiracy to possess and distribute marijuana (120 months),

24   and 18 U.S.C. § 1956(A)(1)(A)(I), (B)(I), (B)(II), and (H), conspiracy to commit money

25   laundering (240 months consecutive.)  (Respondents' Exhs. 1, 2) Petitioner was sent to FCI

26   Phoenix to serve his sentence.  (Respondents' Exh. 1)  Petitioner has a Good Conduct Time

27   ("GCT") release date of July 22, 2025.  (Respondents' Exh. 2)

28           In November 2004, Petitioner was placed in the newly-established Two Hour Watch

1   Program, also known as the Red Card Program (the "Program") based on the color of the cards

2   assigned to inmates in the Program. The Program is a security enhancement for inmates who

3   require additional supervision due to the length of their sentence, previous escape history, or

4   other reason determined by the Executive Staff.  (Respondents' Exhs. 3, 4) Inmates in the

5   Program must report to staff every two hours between 5:30 a.m. and 9:30 p.m.. (Id.) Petitioner

6   was placed in the Program because he was a principal or organizer of a major marijuana

7   importation and distribution organization whose activities resulted in his criminal conviction

8   and thirty year sentence.  (Respondents' Exhs. 3 and 4)

9           On March 29, 2005, Petitioner failed to report to staff as part of the Red Card Program.

10  (Respondents' Exh. 3) As a result, FCI staff prepared and provided Petitioner with a copy of

11  Incident Report No. 1326625 which charged him with violating Code 306, refusing to

12  work/refusing a program.  (Id.)  On April 20, 2005, a hearing was conducted by Disciplinary

13  Hearing Officer ("DHO") Charles Reed.  (Respondents' Exh. 4)  At the beginning of the

14  hearing, DHO Reed advised Petitioner of the charges against him and his due process rights and

15  asked Petitioner if he understood his rights.  DHO Reed also verified that Petitioner had

16  received a copy of the charges at least 24 hours in advance of the hearing.  Petitioner stated that

17  he had timely received a copy of the charges, understood his rights, and was ready to proceed.

18  Petitioner requested that Correctional Officer ("CO") Paske attend as a staff representative and

19  that CO Armenta be called as a witness.   Petitioner was advised that Paske was no longer at

20  FCI Phoenix and that the hearing would be postponed if Petitioner wanted to chose another staff

21  representative.  Petitioner waived his rights to a staff representative, declined his right to call

22  a witness, and asked that the hearing proceed.   After considering the evidence, including the

23  eyewitness account of the reporting staff member and Petitioner's admissions that the Incident

24  Report was true and that the requirements of the Red Card Program had been explained to him,

25  DHO Reed found that Petitioner had violated Code 306, refusing to accept a program

26  assignment.  (Respondents' Exh. 4, 5)

27          As sanctions DHO Reed imposed the loss of 7 days of GCT, 15 days of Disciplinary

28                                                          - 2 -

Segregation (suspended), and a disciplinary transfer (also suspended). (Respondents' Exhs. 3-5) Petitioner appealed the DHO's decision to the Regional Director (BP-10 #375621-RI), who denied the appeal on June 2, 2005. Petitioner appealed the Regional Director's denial to the National Inmate Hearings Administrator, who denied the appeal on August 22, 2005. (Respondents' Exh. 5 at 11-15)

Thereafter, Petitioner filed the pending Petition. (document # 1) Petitioner asserts that on or about October 2004, he was placed in the Red Card Program which caused him to lose 7 days GCT "for failing to perfectly comply with its numerous unwritten requirements." (document # 1 at 3) Respondents concede that Petitioner exhausted his administrative remedies and that a petition under 28 U.S.C. § 2241 is the proper vehicle for Petitioner's claims. (document # 12 at 3 n. 2 (citing Carmona v. U.S. Bureau of Prisons, 243 F.3d 629 (9th Cir. 2001)). Petitioner essentially asserts two claims: (1) that his placement in the Red Card Program violated due process; and (2) that the loss of good time credits violated due process.

## II.  Merits of Petitioner's Claims

### A.  Classification and Red Card Program

As Petitioner's Reply makes clear, he primarily challenges his placement in the Red Card Program as a violation of the Due Process Clause. Title 18 U.S.C. § 4081 provides that:

> The Federal penal and correctional institutions shall be so planned and limited in size as to facilitate the development of an integrated system which will assure the proper classification and segregation of Federal prisoners according to the nature of the offense committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the person committed to such institutions.

18 U.S.C. § 4081. In response to § 4081, the Bureau of Prisons ("BOP") developed a Security and Custody Classification System (the "System"). (Respondents' Exh. 6, BOP Program Statement 5100.07) In classifying an inmate, the BOP considers the following factors: severity of current offense level, length of current sentence, criminal history, history of violence, history of escapes and escape attempts, number and type of detainers, involvement with drugs and alcohol, mental or psychological stability, institutional adjustment and responsibility.

1   (Respondents' Exh. 6)  Based on these factors, BOP staff determine the security and custody

2   needs and classification of each inmate.  (BOP Program Statement 5100.07, Chapter 8 at 1-22

3   attached as Respondents' Exh. 6 and accessible at www.bop.gov).

4         Petitioner asserts that his placement in the Two Hour Watch, or Red Card Program,

5   violates the Due Process Clause.    "A due process claim is cognizable only if there is a

6   recognized liberty or property interest at stake." Schroeder v. McDonald, 55 F.3d 454, 462 (9th

7   Cir.1995). Prison administrators have broad discretion over classification and eligibility for

8   rehabilitative programs.  Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976). Prisoners have "no

9   legitimate statutory or constitutional entitlement sufficient to invoke due process" even if the

10  prisoner is classified incorrectly or denied access to rehabilitative programs. Id.  The Supreme

11  Court has held that prison officials' exercise of their discretion to classify inmates does not

12  violate the liberty interests of the inmates.  Moody, 429 U.S. at 88.  In Moody, the Supreme

13  Court noted that

14         no due process protections were required upon the discretionary transfer of state
           prisoners to a substantially less agreeable prison, even where that transfer visited
15         a 'grievous loss' upon the inmate.  The same is true of prisoner classification and
           eligibility for rehabilitative programs in the federal system.  Congress has given
16         federal prison officials full discretion to control these conditions of confinement,
           18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional
17         entitlement sufficient to invoke due process.

18  Moody, 429 U.S. at 88 n. 9.  See also Schroeder v. McDonald, 55 F.3d 454, 462 (9th Cir.

19  1995)(holding that a state prison could transfer an inmate to a more secure facility despite a

20  prison regulation requiring him to be held in the least restrictive confinement); Soloman v.

21  Benson, 563 F.2d 339 (7th Cir. 1977)(holding that a federal inmate was not entitled to a due

22  process hearing before being classified as a special offender even though the classification

23  adversely affected his eligibility for transfers, furloughs and minimum security programs);

24  Anderson v. County of Kern, 45 F.3d 1310, 1315 (9th Cir. 1995)(stating that the hardship

25  associated with administrative segregation, such as loss of recreational and rehabilitative

26  programs or confinement to one's cell for a lengthy period of time, does not violate the due

27  process clause because there is no liberty interest in remaining in the general population.)

28                                          - 4 -

Because Petitioner has no constitutional entitlement to a particular prison classification, Respondents did not violate a clearly established constitutional right by assigning him to the Red Card Program.

Petitioner's classification and placement in the Red Card Program was based on the nature of the offense he committed.  He was convicted of Conspiracy to Distribute Marijuana and Money Laundering, for which he was sentenced to an aggregated term of 360 months imprisonment and 6 years of supervised release.  In classifying Petitioner, the BOP considered Petitioner's Pre-Sentence Investigation Report ("PSI").  (Respondents' Exh. 9, filed under seal)  In 2003, Petitioner's custody classification was raised from Moderate Severity to Greatest Severity based on his PSI which stated that Petitioner had an ownership interest in a large scale drug organization and was held accountable for 58,178 pounds of marijuana.  (Respondents' Exh. 7, Exh 8 at 9-17)  Over a year later, after the implementation of the Red Card Program, Petitioner's classification resulted in his placement in that Program.  (Respondents' Exh. 3)  Contrary to Petitioner's assertion, his placement in the Red Card Program does not violate due process.  Moody, 429 U.S. at 88.

In his Reply, Petitioner argues that Respondents attempt to mislead the Court by stating that Petitioner was accorded notice and a hearing before being placed in the Red Card Program.  Petitioner's reading of Respondents' Answer is incorrect.  Respondents do not claim that Petitioner was afforded a hearing before being placed in the Red Card Program. Rather, they assert that he was not entitled to any process before being placed in that Program.  As discussed above, the Court agrees.  The discussion in Respondents' Answer about notice and a hearing relates to Petitioner's alleged violation of the terms of the Red Card Program and his loss of good time credits.   The Court will address that issue below.

**B.  Loss of Good Time Credits**

In addition to challenging his classification, Petitioner claims that the revocation of his good time credits violated due process.  Habeas corpus relief is available under 28 U.S.C. § 2241 for a prisoner's claim that he has been denied good time credits without due process of

- 5 -

1  law.  Preiser v. Rodriguez, 411 U.S. 475, 487-88 (1983).  Revocation of good time credits

2  comports with due process where prison officials provide an inmate the following: (1) written

3  notice of the infraction at least 24 hours prior to the disciplinary hearing; (2) the opportunity to

4  call witnesses unless it would be unduly hazardous to institutional safety or correctional goals;

5  (3) assistance in preparing and presenting a defense to the disciplinary charge; (4) a written

6  copy of the disciplinary findings; and (5) a sufficiently impartial decision maker.  Wolff v.

7  McDonald, 418 U.S. 539, 563-66 (1974).  Additionally, "some evidence" must support the

8  disciplinary hearing officer's finding.  Superintendent v. Hill, 472 U.S. 445, 455 (1985).

9       These requirements were satisfied in Petitioner's case.  Petitioner received a copy of the

10  incident report on March 30, 2005, twenty-one days before the hearing.  (Respondents' Exh. 5)

11  Petitioner requested Correctional Officer Armenta as a witness at the hearing.  (Respondents'

12  Exh. 3 at 13) Petitioner requested Correctional Officer Paske as his staff representative.

13  Petitioner was advised that Officer Paske had been transferred to another BOP facility and that

14  Petitioner could request a continuance of the hearing so he could select another staff member.

15  Petitioner waived his right to a staff representative and a witness. (Respondents' Exh. 5)

16  Disciplinary Hearing Officer ("DHO") Reed conducted the hearing.  He neither witnessed nor

17  investigated the hearing, therefore Reed was an impartial decision maker.  (Respondents' Exh.

18  5) DHO Reed considered the evidence including Senior CO D. Iverson's eyewitness account

19  and Petitioner's admissions that the Incident Report was accurate and that the requirements of

20  the Red Card Program had been explained to him.  Based on that evidence, DHO Reed imposed

21  sanctions of the loss of 7 days GCT, 15 days of disciplinary segregation (suspended), and

22  recommended a disciplinary transfer (suspended).  (Respondents' Exh. 5) DHO Reed also

23  advised Petitioner of his right to appeal and on April 22, 2005, provided him with a copy of the

24  Amended DHO Report.  (Respondents' Exh. 5)

25       Based on the foregoing, the Court finds that the disciplinary hearing comported with due

26  process.  Wolff, 418 U.S. at 563-66.  Additionally, "some evidence" supports the DHO's

27  finding.  The requirements of due process are met if the decision to revoke good time credits

28                                          - 6 -

as a sanction for disciplinary violations is supported by "some evidence."  Superintendent v. Hill, 472 U.S. 445, 455 (1985).   In determining whether this standard is met, the "relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56.  The Ninth Circuit has described the "some evidence" standard as "minimally stringent" and ruled that "there must be some indicia of reliability of the information that forms the basis for prison disciplinary actions." Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987).

   The evidence in this case satisfies the "some evidence" standard.   First, CO D. Iverson offered an eyewitness account of the events.  He reported that Petitioner failed to check in with staff and present his red card at the designated time of 1:30 p.m.; Iverson searched for, but could not find, Petitioner in his housing unit, at his work assignment, or in the recreation yard; Iverson found Petitioner at 2:00 p.m. in the law library during the 2:00 p.m. open move; Petitioner told Iverson that his day superintendent had given his permission to go to the law library at 1:30 the day before but that he had changed his mind and decided to go the next day. (Respondents' Exh. 5) In addition to Iverson's account, Petitioner admitted that the allegations in the Incident Report were true and that the requirements of the Red Card Program had been explained to him.  The foregoing evidence constitutes "some evidence" to support DHO Reed's finding that Petitioner committed the charged disciplinary violation which warranted sanctions.  Superintendent v. Hill, 472 U.S. at 455.  Because the disciplinary hearing comported with due process and some evidence supports the disciplinary officer's finding, Petitioner's claim fails on the merits.

## CONCLUSION

   In accordance with the foregoing, the Court finds that Petitioner's § 2241 Petition should be denied because Petitioner's claims lack merit.

   Accordingly,

   IT IS HEREBY RECOMMENDED that Petitioner's Petition for Writ of Habeas Corpus by a Person in Federal Custody pursuant to 28 U.S.C. § 2241 (document # 1) be **DENIED.**

1    This recommendation is not an order that is immediately appealable to the Ninth Circuit

2  Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate

3  Procedure, should not be filed until entry of the District Court's judgment.  The parties shall

4  have ten days from the date of service of a copy of this recommendation within which to file

5  specific written objections with the Court.  *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e),

6  Federal Rules of Civil Procedure.  Thereafter, the parties have ten days within which to file a

7  response to the objections. Failure timely to file objections to the Magistrate Judge's Report and

8  Recommendation may result in the acceptance of the Report and Recommendation by the

9  District Court without further review.  *See United States v. Reyna- Tapia*, 328 F.3d 1114, 1121

10  (9th Cir. 2003).  Failure timely to file objections to any factual determinations of the Magistrate

11  Judge will be considered a waiver of a party's right to appellate review of the findings of fact

12  in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule

13  72, Federal Rules of Civil Procedure.

14    DATED this 8th day of December, 2005.

15

16                              Lawrence O. Anderson
17                              United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28